**In the Matter of Morton SOLOMON et al., Bankrupts-Appellants.**

No. 73–1857.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1974.

Decided Nov. 20, 1974.

C. Robert Yellin, Eugene Crane, Allan R. Cohen, Chicago, Ill., for bankrupts-appellants.

Richard S. Weinberg, Arnold J. Karzov, Chicago, Ill., for appellee.

Before SWYGERT, Chief Judge, CUMMINGS, Circuit Judge, and RIVES, Senior Circuit Judge.*

PER CURIAM.

Bankrupts appeal from the order of the district court affirming the referee's denial of discharge under § 14(c)(3) of the Bankruptcy Act, 11 U.S.C. § 32(c)(3). Section 14(c)(3) provides:

(c) The court shall grant the discharge unless satisfied that the bank-

---

* Senior Circuit Judge Richard T. Rives of the Fifth Circuit is sitting by designation.

rupt has . . . (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published ' in any manner whatsoever, a materially false statement in writing respecting his financial condition . . ..

There is no issue as to the falsity of the documents submitted; bankrupts seek to avoid the effect of § 14(c)(3) on the dual grounds that the record does not support a finding of creditor reliance upon the written statements submitted and that in any event the objections to discharge were not timely filed. We affirm.

■ The transaction in question took place on December 10, 1970. Bankrupts on that date obtained a loan from M.L.C. Corporation, Inc., in the amount of three thousand dollars ($3,000.00). The check from M.L.C. was payable to Morton Solomon and Steven Novil d/b/a Trimaway Salon, one of the three business partnerships operated by the bankrupts. The check was endorsed and cashed on the day it was received, December 10, 1970.

As a prerequisite to its extension of credit, and in accordance with its established policy, M.L.C. asked for and received from bankrupts written information including copies of their individual tax returns for 1968 and 1969, copies of the partnership returns for the same years, statements of indebtedness for both individuals as of December 10, 1970 and an income statement and balance sheet for the Trimaway partnership for the ten month period ending October 31, 1970. All of the information submitted was materially and substantially false. The documents were delivered to M.L.C. on December 10, 1970 and on that day Bankrupts also signed an affidavit stating that the loan was obtained for business purposes.

Bankrupts testified that the written financial statements were not given to M.L.C. until after the loan was disbursed, and that prior to the time the check was actually received they had made only oral representations to M.L.C. concerning their financial condition. The loan officer who processed bankrupts' loan testified that the documents were delivered to M.L.C. prior to disbursement and that the written materials were relied upon by M.L.C. in giving final approval for the loan. The referee chose to believe the testimony of the loan officer and specifically found that the disputed materials were delivered prior to disbursement and that M.L.C. relied upon them. We cannot say that this finding was clearly erroneous. Mazer v. United States, 298 F.2d 579 (7th Cir. 1962). Bankrupts had admitted the falsity of their financial statements in proceedings before the referee. No similar evidence existed to impugn the credibility of the loan officer. Further, the testimony of bankrupts as to the exact time of delivery of the documents was less than consistent. It is not our function to resolve the conflicting inferences which might properly be drawn from such testimony. In re Simon, 216 F.2d 339, 341 (7th Cir. 1954).

Bankrupts further argue that even if the record would support a finding that the terms of § 14(c)(3) had been violated, the referee had no power to entertain the objection to discharge. They say that the § 14(c)(3) objection was not filed until after the date originally set by the referee for filing of such objections and a full five months after the first date set for the first meeting of creditors, all in violation of § 14(b)(1) of the Bankruptcy Act, 11 U.S.C. § 32(b)(1). That section provides:

The court shall make an order fixing a time for the filing of objections to the bankrupt's discharge and a time for the filing of applications pursuant to section 35(c)(2) of this title to determine the dischargeability of debts, which time or times shall be not less than thirty days nor more than ninety days after the first date set for the first meeting of creditors. Notice of such order shall be given to all parties in interest as provided in section

94(b) of this title. The Court may, upon its own motion or, for cause shown, upon motion of any party in interest, extend the time or times for filing such objections or applications.

Regarding the referee's original order, the record clearly indicates that on May 13, 1971, at the close of the first session of the first meeting of creditors, the time for filing objections was orally extended from June 14, 1971 to the sine die date for the first meeting of creditors. This extension was made in the presence of bankrupts and their attorney. Subsequently a written motion was made to confirm the extension and an order was entered by the referee on June 15, 1971 confirming the extension. The § 14(c)(3) objection was filed on October 7, 1971, well within the extended filing period.

Finally, there is no legal basis for the contention that the ninety day limitation referred to in § 14(b)(1) is mandatory and that the referee was powerless to extend the time for filing beyond that suggested limit as he did here. The section clearly contemplates such an extension either on the court's own motion or on motion of a party for cause shown. When the referee made the contested extension it was clear that the original date would have effectively precluded a proper examination of bankrupts. At that point it was not clear how extensive the examination would be, and the extension to the sine die date was therefore appropriate. Bankrupts were not surprised in any way either by the extension itself or by the objection. The creditor, M.L.C., had filed an application for a determination of non-dischargeability under § 17(a)(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), on June 25, 1971, relying on the same transaction relied upon in the § 14(c)(3) application here in issue. Hearing of the § 17 motion was set for October 14, 1971 and the § 14 application was filed on October 7, 1971, allowing for consolidation of the two nearly identical applications for hearing on the 14th. Under the circumstances this procedure was not only legally permissible, it was eminently fair as well.

The order of the district court is therefore affirmed.