**In re John Q. A. WEBB.**

**Bankruptcy No. 80–00201–HB.**

United States Bankruptcy Court,
S. D. Texas,
Houston Division.

Jan. 26, 1981.

Ann Ryan Robertson, Margraves, Kennerly & Schueler, Houston, Tex., for Cullen Center Bank.

Robert M. Freedman, Houston, Tex., for John Q. A. Webb, debtor.

Daniel E. O'Connell, Houston, Tex., trustee.

## MEMORANDUM OPINION

JOHN R. BLINN, Bankruptcy Judge:

This case presents yet another aspect of a very difficult area. The issue here is whether a creditor has established "excusable neglect" under Bankruptcy Rule 906(b)(2) to cause the Court to allow the creditor to file a complaint to determine the dischargeability of its debt after the filing deadline but before the granting of the discharge.

The facts are as follows: John Webb filed a voluntary petition in Chapter 7 on February 7, 1980. On March 24, 1980 creditors were noticed of the § 341 meeting set for April 15, 1980. Cullen Bank & Trust (Cullen) forwarded notice of the § 341 meeting to Ann Ryan Robertson (attorney for Cullen) on April 16, 1980—the day after the meeting. The notice indicated that the last day for filing a complaint to determine the dischargeability of a debt pursuant to § 523 was June 15, 1980. On June 6, 1980 Cullen's attorney filed a proof of claim in behalf of Cullen Bank & Trust for a debt in excess of $26,000.

On October 27, 1980 Cullen's attorney moved for additional time to file a complaint to except Cullen's debt from discharge (not yet granted). The motion was made over four months after the June 15 deadline. Cullen's attorney stated in an affidavit that as of June 6, 1980 no agent, officer, or employee of Cullen had indicated that there might be grounds for an exception to discharge. Brian Cogburn, loan review officer for Cullen, said in another affidavit that he was charged with Cullen's file on the debtor "during the latter part of June," and that "sometime during the middle of August, [he] became aware that fraud could be an exception to the dischargeability of a debt and that there might be a possibility that Dr. Webb was guilty of fraud."

Cullen argues that if its motion for a time extension is denied and the debtor is granted a discharge, it will be unable to seek revocation of the discharge pursuant to § 727(d) because that section applies only when fraud is discovered *after* a discharge has been granted. Cullen urges that its untimely action was the result of "excusable neglect."

Rule 409(a)(2) provides that the court may fix a time not less than thirty days and not more than ninety days after the date set for the § 341 meeting for the filing of a complaint to determine the dischargeability of a debt. Rule 404(c) states that the court may for cause, on its own initiative or on application of any party in interest, extend the time for filing a complaint objecting to discharge. Rule

906(b)(1) grants the court discretion to extend the time for filing a complaint objecting to discharge provided the "period originally prescribed" has not expired. When this time has passed, Rule 906(b)(2) provides that the court may grant an extension only upon application showing "excusable neglect." Some decisions rendered just after the Bankruptcy Rules became effective October, 1973, construed the term "after the period originally prescribed" in Rule 906(b)(2) to mean the maximum ninety days after the § 341 meeting so that if an application to extend was made after the date fixed by the court but within the ninety-day period, it should be granted under (b)(1) without the necessity of showing "excusable neglect." *Keenan v. Builders Appliances, Inc.*, 384 F.Supp. 14 (E.D.Wis., 1974). Other courts, however, declined to follow this rationale. *Loving v. Lee*, 4 BCD 585 (E.D. Va., 1978). One court concluded that through the application of Rule 404(c) it was not necessary to show excusable neglect, *In re Pinemont Development Co.*, 1 BCD 152 (N.D.Miss., 1974), but this decision has not been followed in other jurisdictions. But see *In re Young*, 1 B.R. 387, 390 (M.D. Tenn., 1979). Cullen moved for additional time to file a complaint to except its debt from discharge over four months after the deadline for filing such complaints; Rule 906(b)(1) thus does not apply and it is necessary for the court to find excusable neglect to allow the untimely filing.

■ A finding of excusable neglect should be formal with an evidentiary basis. *In re Capshaw*, 423 F.Supp. 1388 (E.D.Va., 1977). In such a situation the movant has the burden of proof. *In re McFarland*, 4 CBC 77 (W.D.Va., 1975). The term "excusable neglect" was defined recently in *Beneficial Finance Co. of Hartford v. Manning*, 4 BCD 304 (D.Conn., 1978):

> The words excusable neglect are words of art, and are subject to the interpretation of the trier. The court has interpreted 'excusable neglect' as meaning the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform. 4 BCD at 305

Excusable neglect has been construed by the federal courts to be a flexible concept requiring a showing of good faith by the party seeking enlargement, a reasonable basis for noncompliance within the specified period, and a lack of prejudice resulting to the opposing party. *In re Murphy*, 1 BR 736 (S.D.Cal., 1979).

The courts have been most inclined to conclude that neglect was excusable whenever there was doubt as to whether a creditor had received adequate notice of a deadline for filing complaints. *Federal Insurance Co. v. Loveridge*, 1 BCD 1597 (D.Conn., 1977). On the other hand, the courts have been less inclined to find excusable neglect when untimely action resulted from a failure to "discover the law relating to the filing of [a complaint to determine the dischargeability of a debt] until after the time therefor had expired." *In re Molnar*, 2 CBC 174 (W.D.Pa., 1974).

■ The court held *In re Sharp*, 1 CBC 43 (S.D.Md., 1974) that a credit union (Farmer's Production Credit Association) was in the business of extending credit to many individuals who may file bankruptcy and must be charged with a greater degree of knowledge as to the law and the rules of the court than the average non-business creditor. Cullen is a lending institution and, like the credit union in *Sharp*, must be charged with a greater degree of knowledge as to the law and procedure than the average non-business creditor. It appears, however, that Cullen was unaware of its rights and responsibilities. Cullen did not forward notice of the § 341 meeting to its attorney until April 16, 1980—the day after the meeting. Although the deadline for filing a complaint to determine the dischargeability of a debt was June 15, 1980, Cullen's file on the debtor was not forwarded within the bank to Brian Cogburn, loan review officer for Cullen, until the "latter part of June." And even though Mr. Cogburn is the loan review officer for Cullen, he stated in an affidavit that not until "sometime during the middle of August, 1980" did he become aware that "fraud

could be an exception to the dischargeability of a debt." Mr. Cogburn indicated in the same affidavit that he did not even *begin* investigating the debtor's file until "sometime during the middle of August, 1980" though he had possession of that file since "the latter part of June."

*In re Goode*, 3 BR 207 (W.D.Va., 1980) was a case involving a bank which had full knowledge of a bankruptcy proceeding and the deadline for filing complaints respecting dischargeability of debts but which was allegedly "confused" as to proper court procedure and did not bring a dischargeability question to its counsel's attention until after the discharge had been granted. The court said that the deadline for filing complaints pertaining to dischargeability questions should have put the bank on notice. The court commented that "[I]t would seem that a creditor's uncertainty as to its remedy would require something more than routine handling and therefore counsel's advice and guidance should have been sought long before the deadline clearly fixed for filing complaints." 3 BR 207, 209. The court concluded that "[N]eglect of responsibility is in itself insufficient and must be a neglect when reviewed against the backdrop of the facts and circumstances to be that neglect which the court can excuse." 3 BR 207, 210.

Mr. Cogburn states that he examined the file of the bankruptcy court on the debtor and contacted the attorney for Medical Funding Services, Inc. to discuss discrepancies in the debtor's financial statements. On June 12 and 13, 1980 Joyce Colson, attorney for Medical Funding Services, Inc., and Frank Shaw, attorney for Texas Commerce Medical Bank, respectively moved for and were granted additional time to file complaints objecting to discharge. Even if Mr. Cogburn did not discover the extensions granted to Medical Funding Services, Inc. and Texas Commerce Medical Bank when he examined the bankruptcy court's files, then he probably became aware of the extension granted to Medical Funding Services, Inc. when he spoke to its attorney Joyce Colson. Mr. Cogburn should have been aware of a potential dischargeability

problem at that time and should have had the attorney for Cullen move for a time extension to give him additional time to investigate the matter. However, due to inaction by Mr. Cogburn himself and/or Ann Ryan Robertson (attorney for Cullen), the motion was not made until October 27, 1980—two months after Mr. Cogburn first became aware of a potential discharge exception and four months after the filing deadline. In *Beneficial Finance Co. of Hartford v. Manning*, 3 BCD 304 (D.Conn., 1978) a motion for an extension was made three weeks after the deadline. The creditor had not attended the § 341 meeting to examine the debtor but had chosen to carry on a circuitous investigation without the consultation or assistance of counsel. The court held that the creditor's failure to act timely was due solely to circumstances within its control and that its neglect was not excusable, a situation very close to that now before the Court.

Cullen cites *In re Machek*, 368 F.Supp. 956 (M.D.Fla., 1973) and argues that the court in that case allowed an objection to discharge to be filed eight months late where the discharge had not been granted and the objection was based on fraud of the bankrupt not discovered until after the time for filing complaints had expired. It appears, however, that Cullen has misread this case. Judge Scott stated in the *Machek* opinion:

> If a creditor, who has failed to file any objection whatever on the return day, because he has been misled by the bankrupt's fraud into supposing that he has none, nevertheless discovers a good objection, he can apply to the court for leave to plead it. 368 F.Supp. at 958.

The *Machek* language is in turn taken from *Northeastern Real Estate Securities Corp. v. Goldstein*, 91 F.2d 942 (2d Cir., 1937) and refers not to the fraud which forms the basis for exception to discharge as Cullen contends but to concealment of that fraud by an *additional* fraudulent act.

The objection itself may be anything; fraud, perjury, or mere inability to

account for the losses, all that is necessary to show is that it be a good objection and that the bankrupt's fraud shall have prevented its interposition. This is equally true as to a creditor who has pleaded some objection at the return day, but has been prevented from discovering others by the bankrupt's fraud; he too may plead them. It has been observed, however, that in all cases the fraud must thwart discovery of the objection; it has nothing to do with the objection itself. 91 F.2d at 944.

Cullen has not alleged fraudulent concealment by the debtor and therefore *Machek* is of no relevance.

■ The courts have been reluctant to penalize clients for oversights by counsel and have found excusable neglect when delays of only a few days were caused by attorneys or their personnel. For example, in *In re Brecher*, 4 F.2d 1001 (2d Cir., 1925) the court allowed a complaint objecting to discharge to be filed forty-eight hours late because of a clerical error, the nature of which the opinion did not specify. The court in *In re Weidemeyer*, 32 F.Supp. 809 (D.C., E.D.N.Y., 1940) allowed an objection to discharge to be filed one day late after a law clerk became seriously ill the night before the filing deadline and was unable to contact his employer until after the time had expired. Cullen became aware of alleged fraud by the debtor "sometime during the middle of August, 1980," yet the attorney for Cullen did not move for a time extension to file a complaint to except Cullen's debt from discharge until October 27, 1980. Cullen's attorney began work on the case at an early point: she received notice of the § 341 meeting and the deadline for filing complaints to determine the dischargeability of certain debts on April 16, 1980, and filed a proof of claim in behalf of Cullen for a debt in excess of $26,000 on June 6, 1980. If in fact there was so little communication between Cullen and its attorney that the latter did not learn of a potential exception to discharge until over two months after the discovery of the alleged fraud, that is unfortunate and perhaps neglect but not "excusable neglect."

See *In re Gertz*, 1 BR 183 (C.D.Cal., 1979) and *In re Starkey*, 1 CBC 138 (W.D.Wis., 1973).

■ Cullen argues that the granting of an extension of time for it to file a complaint to determine the dischargeability of its debt will not prejudice the debtor, but as held in *In re Rogers*, 2 BR 485 (W.D.Va., 1979): "One cannot say that there was not prejudice to the bankrupt when it received notice of an objection to discharge one month after the filing deadline." Cullen is four months late in filing its complaint, and it would be difficult to find that the debtor will not be prejudiced by this Court's permitting such an untimely filing.

Cullen has not shown a reasonable basis for its untimely action; it appears that Cullen's omission is in the nature of ordinary negligence. However understandable or excusable in another setting, this neglect is not excusable within the meaning of Rule 906(b)(2) of the Bankruptcy Rules. Counsel for the debtor is to present within five days of the entry of this Opinion an appropriate order.