**In the Matter of Eugene HEYWARD and Jacqueline Heyward a/k/a Jacqueline Williams, Debtors.**

**Bankruptcy No. 181–10834–16.**

United States Bankruptcy Court, E. D. New York.

Dec. 5, 1981.

Allen G. Schwartz, Corp. Counsel of the City of New York, for the Motion; Wilma Grinker, New York City, of counsel.

Gerald A. Kagan, New York City, for debtors, in opposition.

MANUEL J. PRICE, Bankruptcy Judge.

This is a motion, made by the Corporation Counsel of the City of New York (The CORPORATION COUNSEL), on behalf of the Department of Social Services of the City of New York (The DEPARTMENT), pursuant to Rules 409(a)(2) and 906(b)(2) of the Rules of Bankruptcy Procedure (The

RULES) for an extension of time in which to file an objection to the dischargeability of its debt against the debtor, Jacqueline Heyward, under Sections 523(a)(2) and (4) of the Bankruptcy Reform Act of 1978 (The BANKRUPTCY CODE or The CODE), 11 U.S.C. § 523(a)(2) and (4).

A short resumé of the facts follows:

Jacqueline Heyward and her husband, Eugene, filed a joint voluntary petition for relief under Chapter 7 of the Code, 11 U.S.C. § 701 *et seq.*, on March 3, 1981. Mrs. Heyward, in the Schedule A–3 attached to the petition, listed the Department of Social Services of the City of New York as one of her creditors having an unsecured claim without priority. She correctly indicated that its mailing address was 250 Church Street, New York, New York.

On March 30, 1981, I signed an order scheduling the meeting of creditors to be held in compliance with Section 341 of the Code, 11 U.S.C. § 341. This notice also fixed the times for filing objections to discharge and for filing complaints to determine the dischargeability of debts. The order designated April 22, 1981 as the date for the Section 341 meeting of creditors, and fixed June 5, 1981 as the last day for filing objections to the debtors' discharge or complaints objecting to the dischargeability of specific debts.

Pursuant to this order, Darlene Brown, a deputy clerk in the office of the Clerk of this court at Brooklyn, executed a certificate of mailing in which she certified that on April 3, 1981 she personally deposited in the United States Mail notices of the Section 341 meeting and of the filing deadlines. According to the certificate, she mailed copies of this notice to "all" of the creditors listed in the schedules submitted with Mrs. Heyward's petition.

On June 9, 1981, four days after the deadline for filing objections to discharge and complaints to determine dischargeability had passed, I signed an order directing the debtors to appear at a hearing on their discharge pursuant to Section 524(d) of the Code, 11 U.S.C. § 524(d). The discharge hearing was scheduled for July 22, 1981.

On July 20, 1981, a proof of claim for $6,000 was filed by the Department with the Clerk of this court. By reason of the fact that no complaint objecting to the dischargeability of the Department's debt had been filed within the time prescribed, the Corporation Counsel, on the same day, submitted an order to show cause why an order should not be granted extending its time to file such a complaint. It also contained an order staying all proceedings in the bankruptcy matter pending the disposition of the motion. The order to show cause was signed by Judge Conrad B. Duberstein acting on my behalf on July 21, 1981. As a result of the stay contained in the order to show cause, the clerk's office communicated with the debtors' attorney on that day to notify him that the discharge hearing would not be held on July 22, 1981.

The explanation proffered by the Corporation Counsel for the Department's failure to file in time consists basically of the contention that improper notice was provided to the Department. Specifically, the Corporation Counsel first claims that neither the Department nor his office ever received notice of the Section 341 meeting and, consequently, of the filing deadlines. Second, he contends that the notice, assuming it was mailed, was addressed to the wrong entity. His representative argues that the notice should have been mailed to the Corporation Counsel's office instead of to the Department, based on the alleged import of Section 311 of the New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 311 (McKinney 1981) which provides:

"*Personal service upon a corporation or governmental subdivision.*

"Personal service upon a corporation or governmental subdivision shall be made by delivering the summons as follows:

    \*    \*    \*    \*    \*    \*

"2. upon the city of New York, to the corporation counsel or to any person designated by him to receive process in a writing filed in the office of the clerk of New York county;"

In view of these claims, the Corporation Counsel states that the Department's failure to act within the specified time for filing its objection resulted from "excusable neglect," as provided under Rule 906(b) of the Rules of Bankruptcy Procedure which provides that:

"(b) *Enlargement.* When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without application or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; . . . ."

I shall first consider the Corporation Counsel's contention that neither he nor the Department received the notice of the Section 341 meeting which contained the filing deadlines.

■ The "fundamental purpose" of notice to creditors is to give them an equal opportunity to avail themselves of the protection of the bankruptcy laws. *In re DeSoto Crude Oil Purchasing Corp.,* 35 F.Supp. 1, 7 (W.D.La.1940). To this end, Section 521(1) of the Code, 11 U.S.C. § 521(1), requires the debtor to provide a list of all creditors that must be filed together with the debtor's petition. Should the debtor fail to include a creditor or to set forth the creditor's correct address, such failure may cause the debt not to be discharged pursuant to Section 523(a)(3) of the Code, 11 U.S.C. § 523(a)(3). The reason for allocating this responsibility and its attendant penalties to the debtor is that it works to assure that the court will identify all creditors and thereby convey to them proper notice of the matter. *See* Weintraub and Resnick, *Bankruptcy Law Manual* ¶ 3.09[3], p. 3–32; 3 *Collier on Bankruptcy,* ¶ 521.03, pp. 521.9–11 (15th ed. 1981).

■ It should be noted, however, that the timely listing of creditors and their claims is all that is required of the debtor. As a matter of fact, Weintraub and Resnick, in their *Bankruptcy Law Manual,* go so far as to say, in this regard, that:

"It should be pointed out that the timely listing or scheduling of the debt is all that is required of the debtor. If the court fails to send notice to the creditor or if, for some reason, the creditor is not actually informed of the bankruptcy, the debt will be discharged nonetheless. The question of actual notice becomes relevant only when the debtor fails to list or schedule the debt." (¶ 3.09[3], p. 3–33)

In the instant case, Mrs. Heyward duly listed the Department as one of fourteen creditors included in the Schedule A–3 filed with her petition. She stated therein that the Department's mailing address was "250 Church Street, New York, New York." There is no question that this is the correct mailing address for the Department. *See The City of New York Official Directory,* 1981–82, p. 128.

According to the Certificate of Mailing completed by the Bankruptcy Clerk's Office, notices were sent to "[a]ll listed creditors," "14" in number, on April 3, 1981. The notice mailed to the Department was not returned for non-delivery.

■ It is well recognized that a proper mailing raises a rebuttable presumption that the article mailed was received by the addressee. *Hagner v. U. S.,* 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); *Avant v. U. S.,* 165 F.Supp. 802, 804 (E.D. Va.1958); *In re Nimz Transportation, Inc.,* 505 F.2d 177, 179 (7th Cir. 1974). This presumption has been specifically applied to bankruptcy matters, even where the creditor claims to have no record of receiving the notice. *See, e. g., In re Gumieny,* 8 B.R. 602, 604 (Bkrtcy., E.D.Wis.1981).

■ Based on the Bankruptcy Clerk's Office documentation certifying the mailing of the notice to the Department and on the presumption of delivery and receipt, this court is entitled to presume that the De-

partment received notice of the Section 341 meeting of creditors and filing deadlines. It is my belief that the Department received the notice and by some mischance it was either mislaid there and not sent to the Corporation Counsel's office for processing or, it was sent to the Corporation Counsel's office with the information about the Department's claim against Mrs. Heyward and was mislaid or misdirected there. In any event, I reject the Corporation Counsel's contention that the Department did not receive the notice.

The Corporation Counsel's second contention is that the notice that the Department received, presuming it was sent, is invalid because it was mailed to the incorrect addressee. He claims that the notice, to have been valid, should have been directed to his office. As authority for this proposition, he relies on Section 311 of the New York Civil Practice Law and Rules, C.P.L.R. § 311, *supra*, which requires that *personal service* of a *summons* upon a government subdivision of the City of New York be made on the Corporation Counsel of New York City.

It must be borne in mind that this section is applicable to *personal service* of a *summons* upon the City of New York. Rule 4003 of the Suggested Interim Bankruptcy Rules (August 15, 1979), which have been adopted by this court, states that Rule 409(a) of the Rules of Bankruptcy Procedure applies to cases filed under Chapter 7 of the Code except that Section 523(c) of the Code be substituted for Section 17(c)(2) of the Bankruptcy Act of 1898, as amended (The ACT).

Rule 409(a)(2) provides that:

"The court shall make an order fixing a time for the filing of a complaint to determine the dischargeability of any debt pursuant to § 17c(2) of the Act [§ 523(c) of the Code]. The time shall not be less than 30 days nor more than 90 days after the first date set for the first meeting of creditors, except that if notice of no dividend is given pursuant to Rule 203(b), the court may fix such time as early as the first date set for the first meeting of creditors. The court shall give creditors at least 30 days' notice of the time so fixed except that only 10 days' notice is required if notice of no dividend is given under Rule 203(b). Such notice shall be given to all creditors in the manner provided in Rule 203. The court may for cause, on its own initiative or on application of any party in interest, extend the time fixed under this paragraph."

Rule 203 provides in subdivision (c), that:
"The court shall give notice by *mail* to all creditors of . . . (7) the time allowed for filing a complaint to determine the dischargeability of a debt pursuant to § 17c(2) of the Act as provided in Rule 409(a)(2)." (emphasis added)

It should be noted that throughout all these rules, constant reference is made to "creditor" or "creditors" as one of the categories of entities entitled to notice. The Code defines "creditor" as the following in Section 101(9), 11 U.S.C. § 101(9):

" 'creditor' means—

"(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;"

It is clear from this definition that the *Department* was a creditor of Mrs. Heyward, not the *Corporation Counsel*, and that she was clearly justified in listing the Department of Social Services as her creditor in her Schedule A–3 which required her to list the "Name of creditor (including last known holder of any negotiable instrument) *complete mailing address* including zip code (if unknown so state)." (emphasis added) She was also correct in listing the Department's "mailing address" as "250 Church Street, New York, New York" for that actually is its "mailing address." It is the Department which is the holder of the claim against her evidenced by the fact that it has filed a proof of claim in this court in which it alleges that it "has office (*sic*) at 250 Church Street, New York, New York 10013" and that "[t]he debtor was, at the time of the filing of the petition initiating this case, and is still indebted [*or* liable] to this *claimant*, in the sum of $6,000." (emphasis added)

It is my opinion that Section 311 of the New York Civil Practice Law and Rules is not applicable to the case at hand. By its very language it applies to the service of a *"summons"* upon the City of New York in an action against it by an adverse party. Mrs. Heyward has not commenced an action against the city, she has filed a petition for relief pursuant to Chapter 7 of the Code and has complied with the provisions thereof and the Rules in order to give the *Department notice* of the fact that it is listed in her schedules. Upon receipt of the notice it was the duty of the *Department*, if it wished, to forward the notice to its attorney, the Corporation Counsel, to take whatever action he deemed appropriate on behalf of the creditor he represented. This is the same burden which every creditor listed in a debtor's schedules has if it is to be represented by an attorney. I find, therefore, that notice of the Section 341 hearing and of the filing deadlines was properly provided in this case to the appropriate entity, the Department.

In light of this finding, the "narrow question" that remains to be addressed is whether the Department may file its objection to the discharge of its claim despite its failure to adhere to the filing deadline fixed by this court. *In re Weidemeyer*, 32 F.Supp. 809 (E.D.N.Y.1940).

The problems created by the late filing of complaints and objections have been aptly described as "vexatious." *In re Young*, 1 B.R. 387, 390 (Bkrtcy., M.D.Tenn.1979). Under Rule 409, a bankruptcy court may for cause, on application of a party in interest or *sua sponte*, extend the time for filing such pleadings. There are, however, antithetical considerations that this court must reconcile in determining whether an extension should be granted.

The preeminent consideration, of course, involves the competing interests of the parties. The debtor is entitled to rely on the deadlines fixed by this court. The creditor, however, is also entitled to have a fair opportunity to file its complaint. The bankruptcy court, it has been noted, "as a court of equity, is required to act with fairness not only to creditors but to debtors as well." *In re Anderson*, 5 B.R. 43, 46 (Bkrtcy., N.D.Ohio 1980).

There is, in addition, a philosophical dilemma presented in the bankruptcy laws themselves. The court is cognizant of the fact that one of the primary objectives of the bankruptcy laws is the "rehabilitation of an honest debtor by discharging his debts to afford him a fresh start in his economic life." *In re Vickers*, 577 F.2d 683, 686–87 (10th Cir. 1978). Thus, to assure that the debtor will have a "realistic opportunity for rehabilitation," *In re Fulton*, 3 B.R. 600, 602 (Bkrtcy., E.D.Mich.1980), it has been "long recognized" that it is a "chief purpose" of the bankruptcy laws to provide for a prompt and effectual settlement and administration of the debtor's estate. *Katchen v. Landy*, 382 U.S. 323, 328, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). ("It is obviously one of the purposes of the Bankrupt law, that there should be a speedy disposition of the bankrupt's assets." *Bailey v. Glover*, 88 U.S. [21 Wall.] 342, 346, 22 L.Ed. 636 [1874]); *In re Blane*, 1 B.C.D. 176 (B.C.E.D. Va.1974); *In re DeSoto Crude Oil Purchasing Corp., supra* at p. 7.

To achieve this goal, Rule 903 requires that there be an "expeditious and economical administration of every bankrupt estate and the just, speedy, and inexpensive determination of every proceeding in bankruptcy." As one court cautioned, "If the law is not to become hopelessly bogged down in delay, time limits must be upheld except in the most egregious cases...." *In re Koritz*, 2 B.R. 408, 414 (Bkrtcy., D.Mass.1979). Because time is so integral to the bankruptcy laws, the time limits that are imposed within which objections to discharge and complaints to determine the dischargeability of debts should be *"narrowly construed."* *In re Koritz, supra* at p. 414 (emphasis added); *In re Vickers, supra* at pp. 686–87.

On the other hand, this court is mindful of the need that "justiciable matters be substantively considered and not be barred by procedural technicalities, unless some important purpose is served." *In re Murphy*, 1 B.R. 736, 739 (Bkrtcy., S.D.Cal.1979).

As has been noted, "[t]he underlying purpose of the bankruptcy laws is a just administration of the debtor's estate which should not be hindered by a too technical application of the rules." *In re Gerber,* 7 B.R. 910, 911 (Bkrtcy., D.Minn., 3d Div. 1981); *see In re Hart,* 7 C.B.C. 479, 483–84 (B.C.D.N.J. 1975).

■ Guided by these considerations, it is my opinion that the excusable neglect standard of Rule 906(b)(2) of the Rules of Bankruptcy Procedure is applicable to the determination of whether an extension of time should be granted under Rule 409(a)(2).

This court agrees with the "better view" that Rule 906(b) should be read in conjunction with Rule 409 and serve to limit the court's discretion under this provision. *In re Breining,* 6 B.R. 837, 841 (Bkrtcy., S.D.N.Y.1980). Although there is some support in contradistinction to this conclusion, *see, e. g., In re Rapino,* 11 B.R. 651, 656–58 (Bkrtcy., E.D.N.Y.1981), the large preponderance of courts hold that Rule 906(b) does control their discretion under Rule 409. *See, e. g., In re Wallace,* 12 B.R. 938, 941 (Bkrtcy., E.D.Pa.1981); *In re Gem Rail Corp.,* 12 B.R. 929, 931 (Bkrtcy., E.D.Pa. 1981); *In re Gerber, supra* at p. 911; *In re Biddy,* 7 B.R. 50, 52 (Bkrtcy., N.D.Ga.1980); *In re Breining, supra* at p. 841; *In re Garchinsky,* 1 B.R. 203, 204 (Bkrtcy., E.D.Pa. 1979); *In re Gertz,* 1 B.R. 183, 185 (Bkrtcy., C.D.Cal.1979); *In re Loveridge,* 2 B.C.D. 1597, 1598 (B.C.D.Conn.1977); *In re Eisenzimmer,* 1 B.C.D. 1587 (B.C.N.D.Ill., E.D. 1975).

The significance of the excusable neglect standard expressed in Rule 906(b) as applied to Rule 409 is that it serves as a guideline for the court in the rather murky waters involving the determination of whether a party's failure to file a complaint objecting to the dischargeability of its debt within the time prescribed should be forgiven in light of the competing concerns of the parties and the objectives of the bankruptcy laws. Consequently, the basic issue before this court is whether the Corporation Counsel has made a showing of excusable neglect sufficient to justify the enlargement of the time in which the Department can file its objection.

The phrase "excusable neglect" has evolved into "words of art," *In re Manning,* 4 B.C.D. 304, 305 (B.C.D.Conn.1978), that have been construed by the courts to be a "flexible concept." *In re Webb,* 8 B.R. 535, 537 (Bkrtcy., S.D.Tex.1981); *see In re Biddy, supra* at p. 52; *In re Murphy, supra* at p. 738. The task of determining the existence of excusable neglect has appropriately been described as a "very difficult area." *In re Webb, supra* at p. 536. And, as my colleague Judge Goetz observed in a recent decision, "[a]lthough the issue is a recurrent one in the bankruptcy courts, the principles to be applied are far from settled." *In re Rapino, supra* at p. 654.

■ Unfortunately, neither the Code nor the Rules define excusable neglect. A widely cited definition of the term, however, does exist. *See, e. g., In re Webb, supra* at p. 537; *In re Biddy, supra* at p. 52; *In re Rogers,* 2 B.R. 485, 487 (Bkrtcy., W.D. Va.1979). This definition equates the term excusable neglect to the following:

"... the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform."

*In re Manning, supra* at p. 305.

The essence of this definition is that in order to determine that a party's failure to act within the specified period of time constituted excusable neglect, there first must be a "reasonable basis" shown. *In re Elliano,* 9 B.R. 287, 288 (Bkrtcy., E.D.N.Y. 1981); *In re Gertz, supra* at p. 185; *see also In re Murphy, supra* at pp. 738–39; *In re Roethe,* 3 B.C.D. 75, 77 (B.C.W.D.Wis.1977); *In re Starkey,* 1 C.B.C. 138, 142 (B.C.W.D. Wis.1973). The burden of proving the existence of such an evidentiary basis falls on the party asking to be relieved of the time bar. *In re Webb, supra* at p. 537; *In re Anderson, supra* at p. 47; *In re Rogers, supra* at p. 487; *In re Advertising Distributors of America, N.Y.,* 1 B.C.D. 1275, 1276 (B.C.S.D.N.Y.1975).

■ The factors to be considered in determining the existence of excusable neglect include the following: (1) the adequacy of the notice provided; (2) the source of the delay and the sophistication of the creditor; and (3) the prejudice, if any, that will inure to the debtor should the objection be allowed. I will discuss each of these considerations *seriatim.*

First, the courts have been "most inclined" to conclude that there was excusable neglect if it was uncertain whether the creditor received adequate notice of the deadline for filing complaints and objections. *In re Webb, supra* at p. 537; *In re Young, supra* at p. 391; *see, e. g., In re Cirves,* 8 C.B.C. 74 (B.C.W.D.Wis.1976); *In re Advertising Distributors of America, N.Y., supra.* Correlatively, the courts are "most inclined" to conclude neglect was inexcusable when the notice is adequate. *In re Young, supra* at p. 391; *see, e. g., In re Manning, supra; In re Roethe, supra; In re Smith,* 2 B.C.D. 968 (B.C.D.Conn.1976); *In re Sharp,* 1 C.B.C. 43 (S.D.Md.1974); *In re Blane, supra.*

In the present case, as discussed earlier, the notice was adequate based on the presumption that the notice was mailed and received by the Department. This is not a situation where the debtor through inadvertance, *Milando v. Perrone,* 157 F.2d 1002 (2d Cir. 1946), or fraud, 1A *Collier on Bankruptcy* ¶ 14.06 n. 10 (14th ed. 1978), failed to notify a creditor. Thus, there can be no finding of excusable neglect here based on any inadequacy of the notice.

Second, the cause of the Department's delayed filing of its objection would appear to have stemmed from either (1) a misinterpretation of the bankruptcy laws and procedures; (2) a breakdown in its internal procedures; and/or (3) ordinary negligence. Regardless of which was the case, the courts do not recognize any of these factors as being sufficient to constitute excusable neglect. As one court explained concerning tardy filings resulting from a misinterpretation of the procedure in bankruptcy matters:

"To condone failure to comply with [the bankruptcy] rules on the grounds that an attorney thought they were otherwise would be to create an exception to the rules which would result in no compliance with any rules."

*In re Young, supra* at p. 393; *see also In re Anderson, supra; In re Smith, supra; In re Molnar,* 2 C.B.C. 174 (B.C.W.D.Pa.1974). Similarly, ordinary negligence presents insufficient grounds for a finding of excusable neglect. *In re Starkey, supra* at p. 142; *see also In re Breining, supra* (general confusion regarding court procedure is not excusable); *In re Gertz, supra* (negligence of creditor's lawyer does not constitute excusable neglect). *But see In re Murphy, supra* (one-day delay in filing due to clerical mistake is excusable); *In re Canifax,* 2 B.C.D. 225 (D.Ore.1976); (one-week delay caused by a misunderstanding between the creditor and his attorney constitutes excusable neglect); *In re Hart, supra* (three-day delay arising from attorney's absence is excusable).

Although misunderstandings between clients and their attorneys have been considered to constitute excusable negligence, *see, e. g., In re Canifax, supra,* the instant matter involves neither an unsophisticated client, the Department, nor an inexperienced attorney, the Corporation Counsel. The Department as well as the City through the Corporation Counsel are well versed in the procedural aspects of litigation and of the crucial significance of adhering to the relevant statutes of limitations.

If, for example, the roles were reversed, that is, if the Corporation Counsel was representing New York City (The CITY), as a defendant in a personal injury action where the pertinent statute of limitations had run against the plaintiff, it would surely be the Corporation Counsel's strongest and probably most successful defense to rely on the statute of limitations as a bar to the personal injury action. As a matter of fact, the Corporation Counsel has diligently pressed this defense irrespective of the merits of a plaintiff's claim.

The cases are legion in which the Corporation Counsel has successfully asserted the affirmative defense of the statute of limitations in various actions against the City. Specifically, the Corporation Counsel has alternately relied on Section 50–e of the General Municipal Law, N.Y.Gen.Mun.L. § 50–e (McKinney 1977), which mandates that a Notice of Claim against a municipality be filed within ninety days of the accrual of the cause of action, *see, e. g., Davis v. City of New York*, 38 N.Y.2d 257, 379 N.Y. S.2d 721, 342 N.E.2d 516 (1975) (malpractice action against the City for misdiagnosis of carcinoma of plaintiff's right breast which ultimately caused her death barred because Notice of Claim was not timely filed); *Askew v. City of New York*, 70 A.D.2d 942, 417 N.Y.S.2d 783 (App.Div., 2d Dept. 1979) (malpractice action against the City dismissed because Notice of Claim was filed forty-nine days late); *Colena v. City of New York*, 68 A.D.2d 898, 414 N.Y.S.2d 220 (App.Div., 2d Dept. 1979) (action against the City for assault, false arrest and malicious prosecution dismissed because Notice of Claim had been served forty-nine days prior to the dismissal of the charge and had not been reserved subsequent thereto); *Pavlicko v. City of New York*, 56 A.D.2d 840, 392 N.Y.S.2d 77 (App.Div., 2d Dept. 1977) (minor's cause of action against the City barred because guardian had served Notice of Claim two days late and had not moved within one year for an extension of time to serve it), or Section 50–i of the General Municipal Law, N.Y.Gen.Mun.L. § 50–i (McKinney 1977) which requires a complaint to be served within one year and ninety days of the accrual of the cause of action, *see, e. g., Ortiz v. City of New York*, 28 A.D.2d 1098, 284 N.Y.S.2d 370 (App.Div. 1st Dept. 1967) (damage action against New York City time-barred due to late filing of complaint); *Joiner v. City of New York*, 26 A.D.2d 840, 274 N.Y.S.2d 362 (App.Div., 2d Dept. 1966) (complaint based on action against New York City for assault, false arrest and malicious prosecution precluded as untimely). The Corporation Counsel's reliance on such statutory time bars has repeatedly enabled the City to prevail even where the merits of the actions appear to have warranted judgment in the plaintiffs' favor, absent this defense.

The case at bar is not one, for example, where excusable neglect was established by the debtor's failure to list the creditor in her schedules or where it did not receive notice of the proceeding, *see, e. g., In re Eisenzimmer, supra; In re Advertising Distributors of America, supra*, or where the attorney misunderstood the client's instructions by filing a claim instead of a complaint, *In re Canifax*, 2 B.C.D. 225 (D.Ore. 1976), or where the clerk to whom the specification of an objection had been entrusted was stricken by a serious illness the night before the deadline for such filing was due. *In re Weidemeyer, supra.*

In each of these examples, it should be noted, that the creditor was diligent and the failure to file on time either stemmed from the creditor not having received notice of the time limitation or from an event which took place beyond its control.

The facts in the instant case, however, are distinguishable. I have found that the Department received timely notice and that it was its responsibility to forward it to its attorney, the Corporation Counsel, so that his office could prepare and file the complaint objecting to the dischargeability of its debt within the prescribed time limit. I have stated that it is my opinion that the notice of the Section 341 meeting which contained the filing deadlines was either mislaid or misrouted by the Department or by the Corporation Counsel's office so that the failure to file the complaint in time or to request an extension prior to June 5, 1981 was due to a breakdown in their own internal procedures. Exactly such a situation was commented upon by Judge Hugh Robinson of the Bankruptcy Court for the Northern District of Georgia in the case of *In re Biddy*, 7 B.R. 50 (1980) when he said, at page 52:

> "Where a litigant's own internal procedures are the cause of a failure to comply with proper legal procedures courts generally refuse to grant relief from the consequences of the lack of compliance.

See *Baez v. S.S. Kresge Company*, 518 F.2d 349 (5th Cir. 1975); *Greenspun v. Bogan*, 492 F.2d 375 (1st Cir. 1974); *International Corporate Enterprises v. Toshoku Ltd.*, 71 F.R.D. 215 (N.D.Tex.1976); *Wagg v. Hall*, 42 F.R.D. 589 (E.D.Pa. 1967); *Nelson v. Coleman Company*, 41 F.R.D. 7 (D.S.C.1966). Although these cases deal with motions to open judgments the same principle has been applied by bankruptcy courts with regard to motions to extend time to file complaints to determine dischargeability. *In re Manning, supra; In re Smith*, 2 B.C.D. 968 (D.Conn.1976)."

I agree with Judge Robinson's conclusion. In the case at bar, the lack of compliance was caused, not by events beyond the control of the Department or the Corporation Counsel, but by a breakdown in their own internal procedures.

The final consideration that concerns the determination of excusable neglect is the prejudice that would result from the late filing of an objection or complaint. The deadline for filing complaints objecting to the dischargeability of any debt in the instant case was June 5, 1981. The Department's motion for an extension of time to file a complaint objecting to the dischargeability of its debt against Mrs. Heyward was received by the Clerk of this court on July 20, 1981, some one and one-half months after the deadline.

Prejudice to the debtor emanating from the untimely filing of objections and complaints is a well recognized concern among the bankruptcy judiciary. *See, e. g., In re Gerber, supra* at p. 911; *In re Biddy, supra* at p. 52; *In re Rogers, supra* at p. 487; *In re Starkey*, 1 C.B.C. 138, 141–42 (B.C.W.D. Wis.1973). The prejudicial effect of delays in such filings was aptly explained in the following:

" . . . [D]elay always causes some harm and may itself be a denial of due process or at least be contra to the essence of rehabilitation. After bankruptcy, life must go on. The viability and rapidity of that process is the essence of the fresh start doctrine. Yet how can the bank-rupt make plans, arrange financing, or attempt to reestablish an economic future until he knows whether his debts—particularly the large ones—are to be discharged or not?"

*In re Koritz, supra* at p. 414.

The debtor is entitled to rely on the filing deadlines provided in the notice and order calling the Section 341 meeting signed by me. In this matter, June 5, 1981 was the final filing date provided for therein after which the debtors, Mrs. Heyward and her husband, would be eligible for a full and complete discharge. The Department, however, made this motion approximately one-and-a-half months after this deadline. Absent the instant motion and the stay contained in the order to show cause, the debtors would have been discharged and would have had the benefit of a fresh start provided for in the Code.

The degree of prejudice resulting from a late filing of an objection or complaint depends on the length of the delay involved. Minor delays such as one week, *In re Canifax, supra,* or one day, *In re Murphy, supra,* have been held not to have prejudiced any rights of a debtor. On the other hand, courts have found that a one month delay, *In re Rogers, supra,* and even delays of less than one month to be prejudicial. *See, e. g., In re Manning, supra,* (three weeks); *In re Smith, supra,* (ten days).

As noted above, more than six weeks passed before the Department made this motion for an extension of time to file its complaint. It is the opinion of this court that such a delay in this matter was inordinate and served to prejudice the interests of the debtor.

Based upon these conclusions, I find that the circumstances surrounding the Department's delay in requesting an extension of time to file a complaint objecting to the dischargeability of its debt do not justify the finding of excusable neglect. This motion is therefore denied.

IT IS SO ORDERED.