**In re Miguelina FIGUEROA, Debtor.**

**Bankruptcy No. 83 B 10154.**

United States Bankruptcy Court,
S.D. New York.

Sept. 20, 1983.

Sennet & Krumholz, New York City, for plaintiff Citibank by Charles Sabel, New York City, of counsel.

Horwitz & Associates, New York City, for debtor by Glenn E. Siegel, New York City, of counsel.

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

Citibank, N.A. ("Citibank"), a creditor in the above-captioned action, moves for an order pursuant to Bankruptcy Rule of Procedure 409(a)(2) granting it an extension of time within which to file a complaint to determine the dischargeability of its unsecured claim against Miguelina Figueroa

("debtor"), pursuant to § 523(c) of the Bankruptcy Code ("Code").

## I

Citibank's claim against the debtor arose from purchases totalling $4,481.16 that she charged to her Citibank Visa account. Debtor opened her Visa account with Citibank in September of 1982, with an assigned credit limit of $1,100 for purchases, and $300 for cash advances, for a total of $1,400. Testimony adduced at trial revealed that during the 90 days preceding debtor's Chapter 7 filing, debtor executed 141 charges to her Citibank Visa Card. In January of 1983, approximately 99 purchases, in the amount of $50 or less were charged to debtor's account.[1] Citibank's credit check procedures are such that if a purchase is made for $50 or less, no credit check is made on the cardholder's account. Citibank contends that it was debtor's knowledge and use of this procedure that enabled the debtor to go on "a classic 'credit card spending spree' on the eve of bankruptcy." Thus, if its request for an extension pursuant to Rules 409(a)(2) and 906(b) is not granted, Citibank argues that the debtor will have succeeded in defrauding Citibank and will reap an unjust windfall.

On February 1, 1983, debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Citibank received notice of the debtor's bankruptcy by a copy of this Court's order, setting March 7, 1983 as the date for the § 341(a) meeting of creditors, and June 7, 1983 as the last day to file objections to the discharge of a particular debt. By letter dated April 6, 1983, Robert Cox, counsel to Citicorp Credit Services, Inc., informed debtor's attorneys, Horwitz & Associates, P.C., that Citibank had a possible complaint against the debtor. Furthermore, debtor's attorneys were informed that if they did not respond to Cox's letter within thirty days, that the matter would then be turned over to Citibank's outside counsel for litigation. The letter affirmed that Citibank was aware that June 7, 1983, was the last day for the filing of complaints to determine dischargeability of a debt.

Having received no response from debtor's counsel, on May 5, 1983, Susan J. Gorelick, of Citibank, who acts as a liaison between Citicorp Credit Services, Inc., and Citibank's outside counsel, mailed the documents pertaining to this matter to Mr. Marvin Krumholz, of Sennet & Krumholz, one of several firms employed by Citibank as outside counsel. Her letter summarized the facts relating to Citibank's claim and requested that Mr. Krumholz file a complaint objecting to the dischargeability of the debt prior to June 7, 1983.

The debtor received her discharge on June 15, 1983. Thirteen days after, and for the first time since May 5, 1983, Ms. Gorelick contacted Sennet & Krumholz to ascertain the status of Citibank's complaint. Sennet & Krumholz informed her at that time that they never received her letter of May 5, 1983. Consequently, on July 15, 1983, Sennet & Krumholz, on behalf of their client, moved for an extension of time pursuant to Bankruptcy Rule 409(a)(2) to file a complaint to determine the dischargeability of the debt. They allege that Ms. Gorelick's letter was either lost, misplaced or misdirected by the United States Postal Service.

At the hearing on this proceeding, Ms. Gorelick testified that the procedures employed for the May 5th mailing were the same as those used for all of the other mailings to outside counsel that she had supervised in the past. She explained that the notice of the filing of a bankruptcy petition usually is received by her about one month after its receipt at Citibank's offices in Sioux Falls, South Dakota. Ms. Gorelick also testified that when she received the notice on this particular case, sometime before April 6, 1983, she reviewed debtor's file and found that Citibank had grounds to object to the discharge of this debt. She so informed Mr. Cox, who then wrote the April 6th demand letter, which Ms. Gorelick

---

**1.** Record at 14–15. It should be noted that some of these charges might be Christmas and holiday shopping items.

followed up by her May 5th letter to Sennet & Krumholz.

Ms. Gorelick stated that as she had never had any problem of this nature before, she presumed that Mr. Krumholz had received her May 5th package. On cross-examination, Ms. Gorelick further testified that Citibank did not employ a "tickler" system to flag important dates.

Debtor's attorney contends that it is the absence of such a system, especially in an operation as large and sophisticated as Citibank, that most strongly demonstrates Citibank's lack of excusable neglect and also is the reason why this motion should be denied.

## II

■ Under former Bankruptcy Rules 409(a)(2)[2] and 906(b)(2)[3], this Court clearly could grant Citibank's motion as long as it proved that its failure to file before June 7, 1983 was due to "excusable neglect". The new Bankruptcy Rules 4007(c)[4] and 9006(b)(3)[5], however, no longer permit the courts to extend the time to file a § 523(c) complaint after the expiration date. It is clear that by prohibiting that which it formerly permitted, Congress intended to no longer subject the preeminent fresh start policy to the uncertainties of excusable neglect in failing to timely object to discharge of a claim.

The application of this Congressional intent to the case at bar, however, is not so clear. When the Supreme Court ordered on April 25, 1983 that the new Bankruptcy Rules would take effect on August 1, 1983 absent contrary Congressional action, it also said that the rules "shall be applicable to proceedings then pending, except to the extent that in the opinion of the court their application in a pending proceeding . . .

**2.** Rule 409(a)(2) reads as follows:

(2) Time for Filing Complaint Under § 17c(2) of the Act; Notice of Time Fixed. This court shall make an order fixing a time for the filing of a complaint to determine the dischargeability of any debt pursuant to § 17c(2) of the Act. The time shall be not less than 30 days nor more than 90 days after the first date set for the first meeting of creditors, except that if notice of no dividend is given pursuant to Rule 203(b), the court may fix such time as early as the first date set for the first meeting of creditors. The court shall give creditors at least 30 days' notice of the time so fixed except that only 10 days' notice is required if notice of no dividend is given under Rule 203(b). Such notice shall be given to all creditors in the manner provided in Rule 203. *The court may for cause, on its own initiative or on application of any party in interest, extend the time fixed under this paragraph.* (Emphasis added.) The Advisory Committee Note to Rule 409 states that when the court extends the time as provided in paragraph (2) it shall use the procedures provided therein and in Rule 906(b).

**3.** Rule 906(b) reads, in pertinent part, as follows:

(b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without application or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *upon application made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect;* . . . (Emphasis added.)

**4.** Rule 4007(c) reads as follows:

(c) Time for Filing Complaint Under § 523(c) in Chapter 7 Liquidation and Chapter 11 Reorganization Cases: Notice of Time Fixed. A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. *On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.* (Emphasis added.)

**5.** Rule 9006(b)(3) reads as follows:

(3) Enlargement Limited. The court may enlarge the time for taking action under Rules . . . 4007(c) . . . only to the extent and under the conditions stated in those rules. Thus, the interplay between 4007(c) and 9006(b)(3) reveals that unless the motion to extend time for filing a complaint based on § 523(c) of the Code is made prior to the expiration date, the courts do not have the power to enlarge the time.

would work an injustice, in which event the former procedure applies."

The issue which thus emerges is whether application of new Bankruptcy Rules 4007(c) and 9006(b)(3) to Citibank's motion to extend time would work an injustice to Citibank. We hold that no such injustice has been shown here. Under the broader, more liberal, old Bankruptcy Rule standards, Citibank's motion would be denied. Since Citibank has not shown that there was excusable neglect for its failure to file its complaint by June 7, 1983, *a fortiori*, it has also failed to prove that denial of its Rule 906(b) motion would result in an injustice to it, one of the components of the excusable neglect standard. Consequently, we must deny Citibank's motion.

### III

■ The phrase "excusable neglect" is not defined anywhere in the Rules or the Code. *In re Digby,* 29 B.R. 658, 663 (Bkrtcy.N.D.Ohio W.D.1983); *In re Horvath,* 20 B.R. 962, 966 (Bkrtcy.S.D.N.Y. 1982). *In re Heyward,* 15 B.R. 629, 635 (Bkrtcy.E.D.N.Y.1981). Rather, it is a flexible concept and has become a term of art, subject to interpretation by the trier of facts, and has been defined as:

> ... the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform.

*In re Manning,* 4 B.C.D. 304, 305 (Bkrtcy.D. Conn.1978). Although this definition is widely cited, *e.g., In re Horvath,* 20 B.R. 962, 966 (Bkrtcy.S.D.N.Y.1982); *In re Heyward,* 15 B.R. 629, 635 (Bkrtcy.E.D.N.Y. 1981); *In re Webb,* 8 B.R. 535, 537 (Bkrtcy. S.D.Tex.1981); *In re Biddy,* 7 B.R. 50, 52 (Bkrtcy.N.D.Ga.1980); *In re Rogers,* 2 B.R. 485, 487 (Bkrtcy.W.D.Va.1979), and the issue of the existence of excusable neglect is a recurrent one in the bankruptcy courts, the principles to be applied are far from settled. *In re Heyward,* 15 B.R. 629, 635 (Bkrtcy.E.D.N.Y.1981), citing *In re Rapino,* 11 B.R. 651, 654 (Bkrtcy.E.D.N.Y.1981).

While the divergence in opinion as to the applicable principles is such that it leads one court to state that the excusable neglect standard is a "confused and difficult area", *In re Digby,* 29 B.R. 658, 661 (Bkrtcy. N.D.Ohio, W.D.1983), there is a general consensus among the courts as to several basic concepts. Permeating each court's finding as to whether the creditor's late filing was due to excusable neglect is the need to strike a balance between the two parties' competing interests: (1) the debtor's entitlement to the full benefits of his discharge and (2) the creditor's interest in avoiding the same where possible fraud exists. *In re Digby,* 29 B.R. 658, 662 (Bkrtcy. N.D.Ohio W.D.1983); *In re Elliano,* 9 B.R. 287, 289 (Bkrtcy.E.D.N.Y.1981); *In re Murphy,* 1 B.R. 736, 739 (Bkrtcy.S.D.Cal.1979); *In re Koritz,* 2 B.R. 408, 413 (Bkrtcy.D. Mass.1979); *In re Young,* 1 B.R. 387, 390 (Bkrtcy.M.D.Tenn.1979).

In striking that balance, the courts look for one essential element: whether the party requesting the extension has demonstrated that there is a reasonable basis for its alleged "excusable neglect". *In re Digby,* 29 B.R. 658, 663 (Bkrtcy.N.D.Ohio W.D. 1983); *In re Horvath,* 20 B.R. 962, 966 (Bkrtcy.S.D.N.Y.1982); *In re Heyward,* 15 B.R. 629, 635 (Bkrtcy.E.D.N.Y.1981); *In re Webb,* 8 B.R. 535, 537 (Bkrtcy.S.D.Tex. 1981); *In re Anderson,* 5 B.R. 51, 52 (Bkrtcy.N.D.Ohio 1980). The courts have delineated a panoply of factors to be considered in making that determination: (1) whether the creditor received adequate notice, (2) whether granting the delay will prejudice the debtor, (3) the source and length of the delay, as well as its impact on efficient court administration, (4) whether the delay was beyond the reasonable control of the person whose duty it was to perform, (5) whether the creditor is a sophisticated creditor, (6) whether the creditor acted in good faith, and (7) whether the client should be penalized for counsel's mistake or neglect. *In re Magouirk,* 693 F.2d 948, 951 (9th Cir.1982); *In re Horvath,* 20 B.R. 962, 967 (Bkrtcy.S.D.N.Y.1982); *In re Heyward,* 15 B.R. 629, 636 (Bkrtcy.E.D.N.Y.1981); *In re Webb,* 8 B.R. 535, 537 (Bkrtcy.S.D.Tex.

1981); *In re Biddy,* 7 B.R. 50, 52 (Bkrtcy.N. D.Ga.1980).

In other words, Citibank's counsel must demonstrate that its failure to file by the June 7th deadline was due to something more than ordinary negligence; it must be something that could not have been prevented by diligence. *In re Gurney,* 20 B.R. 91, 95 (Bkrtcy.W.D.Mo.S.D.1983); *In re Gideon,* 17 B.R. 826, 828 (Bkrtcy.D.Me.1982); *In re Parrish,* 13 B.R. 539, 542 (Bkrtcy.W.D. Ky.1981); *In re Goode,* 3 B.R. 207, 210 (Bkrtcy.W.D.Va.1980). If this were not the case and courts were to routinely grant extensions of time, the prophylactic effect of Rule 906(b)(2) would be nil. *In re Gideon,* 17 B.R. 826, 828 (Bkrtcy.D.Me.1982). Application of the above-cited factors to the case at bar reveals that Citibank's failure to comply was, in fact, the result of ordinary negligence, *i.e.,* a breakdown in the internal procedures of either Citibank or its counsel. Accordingly, Citibank's motion must be denied.

Although it is undisputed that Citibank did receive notice of the debtor's bankruptcy containing the June 7th deadline, *supra,* it is contended that Sennet & Krumholz never received Citibank's May 5th letter requesting it to commence an adversary proceeding before June 7th. While it is a well-recognized rule that a proper mailing raises a rebuttal presumption that the article mailed was received by the addressee. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *In re Heyward,* 15 B.R. 629, 632 (Bkrtcy.E.D.N.Y. 1981), proper mailing must be proved before the presumption is activated. *Simpson v. Jefferson Standard Life Insurance Co.,* 465 F.2d 1320, 1323 (6th Cir.1972). Under the common law rule, to establish mailing in order to benefit from the presumption of receipt, proof of three things was required: that the letter (1) was properly addressed, (2) had sufficient postage, and (3) was properly deposited in the mails. *Id.;* 9 Wigmore, *Evidence* § 2519 (1981); *McCormick on Evidence* 807–8 (2d ed. 1972). This has also long been the rule in New York. *News Syndicate Co. v. Gatti Paper Stock Corp.,* 256 N.Y. 211, 214, 176 N.E. 169 (1931);

*Trusts and Guarantee Co. v. Barnhardt,* 270 N.Y. 350, 352, 1 N.E.2d 459 (1936). The presumption is said to be based on the probability that officers of the government will perform their duty. *News Syndicate Co. v. Gatti Paper Stock Corp.,* 256 N.Y. 211, 214, 176 N.E. 169 (1931); *Trusts and Guarantee Co. v. Barnhardt,* 270 N.Y. 350, 352, 1 N.E.2d 459 (1936).

Although no evidence was adduced at the hearing on this proceeding as to the proof of mailing of this particular package, Ms. Gorelick testified that thousands of pieces of mail were sent out daily and that she had never before had a problem with the non-receipt of a package or letter. New York allows proof of a course of office practice or of business from which a presumption of mailing might be inferred in lieu of proof of the actual deposit of the originals in the mails. *Gardam & Son v. Batterson,* 198 N.Y. 175, 178–79. (1910). Ms. Gorelick's testimony, however, does not satisfy even this requirement. New York law mandates that Citibank show that the item in question was placed in the usual receptacle for outgoing mail and, in addition, to call as a witness the particular clerk whose duty it was to mail such letters and have him testify that he invariably mailed all letters found in said receptacle. *Gardam & Son v. Batterson,* 198 N.Y. 175, 178–79, 91 N.E. 371 (1910); *Richardson on Evidence* § 80 (10th Ed. 1973). Hence, there is a gap in Citibank's proof in that it failed to produce a witness as to the latter requirement. The presumption of mailing and, therefore, of receipt does not flow from the evidence adduced at trial. *See Haak v. Brost Motors, Inc.,* 69 Misc.2d 820, 331 N.Y.S.2d 329 (1970) *aff'd* 39 A.D.2d 645, 332 N.Y.S.2d 423 (1972); *Aetna Insurance Co. of Hartford v. Millard,* 25 A.D.2d 341, 269 N.Y.S.2d 588 (1966).

Even assuming that the presumption of mailing were extent, it is not conclusive proof that Sennet & Krumholz received the package because Sennet & Krumholz denies receiving it. This unsworn denial provides some evidence of non-mailing and serves to at least raise a question as to the binding effect of the presumption of receipt. 9

Wigmore, *Evidence* § 2519 (1981); Richardson on Evidence § 80 (10th Ed.1973); *Simpson v. Jefferson Standard Life Insurance Co.,* 465 F.2d 1320, 1322 (6th Cir.1972).

In this case, however, unlike most other cases, the Court need not determine who is more credible, the sender or the recipient. They are not adversaries, as is usually the case, attempting to convince the Court that the other was at fault; rather, they are trying to convince the Court of the same thing: that the United States Postal Service failed to deliver the package. By so doing, they obscure the fact that it is just as probable that the package was never mailed by Citibank or misplaced upon receipt by Sennet & Krumholz. Regardless of which of these two hypotheses is true, since neither was it shown that the package was properly mailed nor that the package would have been properly mailed in the ordinary course of Citibank's regular mailings, this Court is compelled to conclude that the reason for the late filing was an internal breakdown in procedures either at Citibank or at Sennet & Krumholz. *See also In re Heyward,* 15 B.R. 629, 633 (Bkrtcy.E.D.N.Y. 1981).

The importance that a litigant have his day in court cannot be gainsaid. But courts generally refuse to grant a relief from the consequences of noncompliance when it is caused by internal breakdowns. *In re Heyward,* 15 B.R. 629, 637 (Bkrtcy.E.D.N.Y. 1981); *In re Biddy,* 7 B.R. 50, 52 (Bkrtcy.N.D.Ga.1980); *In re Goode,* 3 B.R. 207, 210 (Bkrtcy.W.D.Va.1980). The reason being that a finding that a breakdown in internal procedures caused the noncompliance shows that the events were not beyond the control of the creditor and, hence, according to the *Manning* definition, *supra,* there is no excusable neglect.

Here, this problem could have been easily avoided had Citibank had a tickler system. Even a wall calendar with significant dates would have sufficed. *See, e.g., In re Gertz,* 1 B.R. 183, 184 (Bkrtcy.C.D.Cal.1979). The presence of such a system would have reminded Citibank to either contact Sennet &

Krumholz prior to June 7, 1983, or to file a request for extension itself before the June 7th date. Its default is hardly excusable.

"After bankruptcy, life must go on. The viability and rapidity of that process is the essence of the fresh start doctrine." *In re Koritz,* 2 B.R. 408, 414 (Bkrtcy.Mass.1979). In light of Congress' desire to afford certainty through requiring in Rule 9006(b)(3), that a motion to extend the time to file a complaint objecting to discharge of a debt be made before the time has expired, Citibank's lack of adequate procedures to protect itself from default hardly can constitute the type of injustice in pending proceedings contemplated. Its default was not excusable; its motion to extend the time within which to file its complaint to determine the dischargeability of its unsecured claim against the debtor must be denied.[6]

IT IS SO ORDERED.

---

**6.** The debtor's motion for attorney's fees is denied.