**In re Geneva Crockett GOODE, Debtor.**

**Bankruptcy No. 7–79–00952.**

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

March 12, 1980.

Robert P. Doherty, Jr., Salem, Va., for debtor.

Donald W. Huffman, Roanoke, Va., for trustee.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue here is whether or not excusable neglect exists which will permit Colonial-American National Bank (Bank) to file a Complaint seeking a determination of the dischargeability of a debt owing to the Bank by the Debtor.

The facts pertinent to this decision generally are as follows:

The Debtor, Geneva Crockett Goode, filed her voluntary petition on November 27, 1979, seeking a discharge of her debts under Chapter 7 of the *Bankruptcy Reform Act* of 1978. Thereupon the Court entered an Order fixing the date of January 10, 1980, at 10:00 a. m. for a meeting of creditors pursuant to 11 U.S.C. § 341. The Order also fixed the date of February 11, 1980 as the last day for filing Complaints objecting to the Debtor's discharge or for the determination of the dischargeability of debts and fixed the date of February 13, 1980 for discharge hearing pursuant to 11 U.S.C. § 524(d). This Order and Notice went forth to all the Debtor's creditors, including the Bank, which received a copy of the notice and had a representative present at the 341 Meeting.

The administration of the Debtor's case progressed through the discharge hearing which was duly held on February 13, 1980 as scheduled, upon which date the order granting the discharge was duly issued and mailed to all creditors by the Clerk of this Court on February 14, 1980.

On February 25, 1980, eleven days later, Counsel for the Bank filed a petition seeking leave of Court to file a complaint to have the dischargeability of its debt determined. The Debtor filed written objections thereto. The petition was set for hearing on the issue of excusable neglect.

At said hearing, it appeared that the Bank had received the Order and Notice of the Creditors' Meeting, containing the time table fixed for filing complaints and the discharge hearing; that the facts surrounding the issue as to dischargeability which would be presented upon trial, were known to the Bank prior to the filing of the petition herein by the Debtor on November 27, 1979, and therefore, were not facts which were only recently discovered and unknown to the Bank prior to the passing of the deadline for filing complaints on February 11, 1980. It further appeared that this matter was not referred to Counsel until after February 11, 1980; and that subsequently, Counsel filed the petition herein seeking leave to file a belated complaint upon the grounds of excusable neglect.

Counsel for the Bank stated that although the Bank had full knowledge of this Debtor proceeding and the deadlines fixed in the Order, that nevertheless it was confused as to procedure which should be employed to effect its remedy.

The Court must observe that while the *Bankruptcy Reform Act* of 1978 became effective October 1, 1979, and is new, that further, the fixing of a deadline for filing complaints to determine the dischargeability of debts has been a part of and is construed as routine Bankruptcy procedure since the Congress amended § 17 and § 14 of the *Bankruptcy Act* of 1938, which became effective December 18, 1970. Indeed, it would seem that a creditor's uncertainty as to its remedy would require something more than routine handling and therefore, Counsel's advise and guidance should have been sought long before the deadline clearly fixed for filing complaints.

Excusable neglect questions are governed by *Federal Bankruptcy Rule* 906(b) which provides for the enlargement of time for the performance of certain acts required to be performed and generally follows Rule 6(b) of the *Federal Rules of Civil Procedure* and Rule 26(b) of the *Federal Rules of Appellate Procedure*.

While courts have generally unlimited discretion under 906(b)(1) to grant extensions of time for the performance of certain specified acts when application therefor is made prior to the expiration of the time provided, the same is not true where the application is for an extension of time after the time has expired for the doing of the act to which the time table applies. *See Re: Gentry* (W.D.Va.1974) 1 C.B.C. 433; *In re McFarland* (W.D.Wisc. 1975) 4 C.B.C. 77.

In *McFarland, supra,* the Court states that the party requesting the extension has the burden of showing a reasonable basis for invoking relief under the doctrine of excusable neglect. See also 13 *Collier on Bankruptcy* 906.04(2) (14th ed. 1977). This is a logical rule because procedure in this as in all other courts, deadlines for pleadings and other acts must be adhered to. To do otherwise would frustrate the processes of our judicial system. When such deadline has expired, then this court may invoke the discretionary rule waiving the failure. But this can be waived only where the facts and circumstances warrant excusing the failure.

"Excusable neglect" has been defined in the case of *Beneficial Finance Company v. Manning,* 4 B.C.D. 304 (1978) in the following language:

"The words 'excusable neglect' are words of art, and are subject to the interpretation of the trier. The court has interpreted 'excusable neglect' as meaning the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform."

In this case the Bank was duly notified of this Debtor's petition within a day or so following the mailing of the notice on December 26, 1979. For a period of two months, with full knowledge of the facts surrounding the question of dischargeability, the Bank failed to respond. Apparently, only after the discharge was issued did the Bank consult with its Counsel or bring the matter to Counsel's attention. Other than the assertion that the Bank was confused as to procedure, there was no other explanation for its failure to take timely

action with reference to its remedy. There appears to be no vagueness as to the deadline for filing complaints respecting dischargeability of debts. The date fixed of February 11, 1980 should place upon notice those concerned with dischargeability questions. This is especially true where, as here, the facts were known before the voluntary petition was even filed by the Debtor. Counsel for the Debtor in his argument objecting to the granting of the petition asserted that the Bank appeared frequently in this Court as a creditor and was knowledgeable in Bankruptcy Court procedures. When viewing the question of excusable neglect, familiarity with Court proceedings and deadlines fixed by the Court in the administration of cases are factors to be considered in trying to determine whether or not excusable neglect exists. Neglect of responsibility in itself is not sufficient and must be a neglect when reviewed against the backdrop of the facts and circumstances can be determined by the Court to be that neglect which the Court can excuse.

Accordingly, this Court cannot find that degree of excusable neglect in the facts and circumstances here prevailing which would warrant the granting of discretionary relief and, accordingly the petition is denied and it is so ORDERED.