**In the Matter of Billy W. LEWIS and Barbara B. Lewis.**

**Bankruptcy No. 8400845MC.**

United States Bankruptcy Court, S.D. Mississippi, E.D.

Sept. 8, 1987.

## OPINION AND ORDER

EDWARD ELLINGTON, Chief Judge.

THIS MATTER came on for hearing on a "Motion for Relief From Order" filed by First South Production Credit Association, formerly known as Central Mississippi Production Credit Association (Production Credit); "Answer and Defenses to Motion for Relief From Order" filed by the Debtors; and, "Answer to Affirmative Matter" filed by Production Credit.

At the same time, there came on for hearing a "Motion for Leave to Appeal" filed by Production Credit; "Answer and Defenses to Motion for Leave to Appeal and Counterclaim" filed by the Debtors; and, "Answer to Counter–Claim" filed by Production Credit.

In addition to the oral arguments presented by counsel for the parties at the time the hearing was held in open court, written Briefs were also submitted by the parties.

## DISCUSSION

On June 11, 1984, the Debtors filed their petition seeking relief in accordance with Chapter 13 of the Bankruptcy Code.

On June 25, 1984, the Debtors filed their Chapter 13 Statement of Affairs, Schedules and other related documents, including their proposed Chapter 13 repayment plan.

On July 13, 1984, the Court issued its Order for the meeting of creditors combined with notice of certain other matters. Specifically, the Order noticed creditors that:

A hearing on confirmation of the plan will be held AUGUST 28, 1984 at 10:00 A.M. AT THE FEDERAL BUILDING, MERIDIAN, MS.

*ANY OBJECTION TO CONFIRMATION OR VALUATION MUST BE FILED IN WRITING, SETTING OUT OBJECTION IN DETAIL, AT LEAST 5 DAYS PRIOR TO CONFIRMATION DATE—ORIGINAL TO COURT AND COPIES TO TRUSTEE AND DEBTOR'S ATTORNEY.*

COPY OF PLAN MAY BE OBTAINED FROM THE BANKRUPTCY COURT.

[Emphasis Added.]

On the day set for the confirmation hearing, August 28, 1984, Production Credit filed a written "Objection to Plan." In its objection, Production Credit made some general objections to the plan, and it specifically objected to the valuation which the Debtors had placed on their property. It also objected to the sale of certain of its secured property by the Debtors for $4,000.00 and stated that it had refused to accept the sale proceeds of $4,000.00 which had been tendered to it by the Debtors.

On September 7, 1984, Production Credit filed a motion to require the Debtors to obtain additional insurance on their home, which was serving as security for Production Credit.

On the same date, September 7, 1984, the Debtors filed their "Answer and Defenses to Objection to Plan." The Debtors specifically plead, *inter alia:*

The Objection to Plan is not timely filed in accordance with the Order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stays and said

objection should therefore be disallowed and dismissed.

On October 12, 1984, the Debtors filed an Answer to the motion to require them to purchase additional insurance.

On October 24, 1984, the Court entered an Order Confirming the repayment plan of the Debtors, as modified, except as to the provisions of the plan relating to Production Credit. The Order also directed that there should be paid from the Debtors' wages to the Trustee the amount of $300.96 semi-monthly and that the Trustee should disburse the funds in accordance with the plan and the orders of the Court.

On May 8, 1986, two separate Orders were entered by this Court. One of the Orders dismissed the objection which had been filed by Production Credit on the basis that it had been filed too late. The Order held that the deadline for filing had been on August 23, 1984, and that the objection had not been filed until August 28, 1984. The other Order held that the motion of Production Credit to require the Debtors to obtain additional insurance on their home was well taken and the Debtors were required to increase their insurance coverage to $45,000.00 at their own expense.

Both of these Orders were unique in the same respect. All of the proceedings in this case up until the entry of the two Orders on May 8, 1986, had been conducted by a former judge of this Court. He had resigned effective as of January 15, 1986. The Orders recited that they were results of hearings which had been held on August 27, 1985, by the former judge; that they had been taken under advisement by him; that the Orders had been prepared in draft form by him prior to the date of resignation on January 15, 1986; and, that they were being issued by the undersigned judge on that basis.

After the two Orders were entered on May 8, 1986, Production Credit then filed on May 27, 1986, a motion seeking to have this Court set aside its Order of May 8, 1986, in which the objection of Production Credit to the Debtors' plan was dismissed.

On May 28, 1986, Production Credit also filed a motion for leave to appeal the said Order and filed a Notice of Appeal.

As has been previously noted, the Debtors filed an answer to the motion of Production Credit seeking to have the Order of May 8, 1986, set aside. Production Credit filed an answer to certain affirmative matters contained in the answer of the Debtors.

In response to the Motion for leave to appeal filed by Production Credit, the Debtors answered and also counterclaimed seeking sanctions in the form of attorneys fees. Production Credit filed an answer to the Counterclaim.

A hearing was held on both Motions filed by Production Credit, on the various answers and on the Counterclaim. A record was made of the hearing. Certain documentary proof was admitted into evidence. Also, the attorney for Production Credit, made certain statements into the record about the development and background of the case and he also testified from the witness stand and was cross-examined. In the same fashion, the attorney for the Debtors, made certain statements into the record and also testified from the witness stand. The parties also submitted written briefs.

## RECONSIDERATION AND EXCUSABLE NEGLECT

One of the Orders entered on May 8, 1986, dismissed the Objection of Production Credit on the basis that the objection to the Chapter 13 plan had been filed too late. In the motion which Production Credit filed seeking relief from that Order, it asserted that there had never been a hearing on the issue of the time of the filing of its objection or the circumstances surrounding the filing of the objection.

As has been previously noted, this case is unusual in that all of the hearings prior to the entry of the Orders on May 8, 1986, had been conducted by a former judge of this Court, but the Orders themselves were entered by the undersigned judge.

There were no transcripts of previous hearings in the case and this judge had not conducted the hearings and had no personal knowledge as to what had actually transpired. The Court concluded that in the interest of justice, the case, in effect, should be reopened for the purpose of allowing a record to be made and to determine if there was any reason to justify relief from the operation of the Order entered on May 8, 1986, pursuant to Bankruptcy Rule 9024 and Rule 60 F.R.Civ.P.

■ The Court will first consider the procedural framework provided for the confirmation of a debtor's plan who has filed for relief under Chapter 13 of the Bankruptcy Code.

Section 1324 of the Code provides:

**Confirmation hearing.** After notice, the court shall hold a hearing on confirmation of the plan. A party in interest may object to the confirmation of the plan.

Bankruptcy Rule 2002(b) provides in relevant part:

**Twenty-five-day Notices to Parties in Interest.** ... the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 25 days notice by mail of ... (2) the time fixed for filing objections to the hearing to consider confirmation of a plan.

Objections to confirmation of the plan and the hearing as to the objections are controlled by Bankruptcy Rule 3020(b):

**Objections to and Hearing on Confirmation.**

(1) **Objections.** Objections to confirmation of the plan shall be filed with the court and served on the debtor, the trustee, any committee appointed under the Code and on any other entity designated by the court, within a time fixed by the court. An objection to confirmation is governed by Rule 9014.

(2) **Hearing.** The court shall rule on confirmation of the plan after notice and hearing as provided in Rule 2002. If no objection is timely filed, the court may find, without receiving evidence, that the plan has been proposed in good faith and not by any means forbidden by law.

The procedure is summarized in the Comment to § 1324 of the Bankruptcy Code as follows:

Bankruptcy Rule 2002(b) requires the clerk or some other person as the court directs to give not less than 25 days notice by mail to the debtor, the trustee and all creditors of the time fixed for filing objections to, and the hearing to consider confirmation of a plan.

Bankruptcy Rule 3020(b)(1) requires objections to confirmation to be filed with the court and served on the debtor, the trustee, a committee appointed under the Code and others designated by the court, within a time fixed by the court. An objection to confirmation is a contested matter governed by Rule 9014. Subdivision (b)(2) requires the court to rule on confirmation after hearing as provided in Rule 2002. If no timely objection is filed, the court may find, without hearing evidence, that the plan has been proposed in good faith and not by any means forbidden by law.

Applying the procedure to the case at bar, on July 13, 1984, pursuant to § 1324, the Court issued its Order for the meeting of creditors on July 31, 1984. The Court further ordered, as required by Bankruptcy Rule 2002(b), that the hearing to consider confirmation of the plan would be held on August 28, 1984, at 10:00 A.M., and that any objections to confirmation or valuation had to be filed in writing at least five (5) days prior to the confirmation date, i.e. August 23, 1984.

In the case at bar, the creditor did not file its written objection on or before August 23, 1984. The objection was filed on August 28, 1984.

Bankruptcy Rule 9006(b) provides the standards that apply for the enlargement of time for the performance of acts required or allowed by the Bankruptcy Rules.

The standards that are to be applied to determine whether an enlargement of time is to be permitted in order to allow an objection to confirmation or valuation to be

filed late, are provided in Bankruptcy Rule 9006(b)(1):

> **In General.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

In the case at bar, the objection was not filed by the date set by the Court. However, on motion made after the expiration of the specified period, the Court may permit an objection to be filed where the failure to file the objection was the result of excusable neglect.

No motion was ever filed by Production Credit seeking permission to file the objection late. The objection was simply filed and the issue of the late filing was raised by the debtors in their response.

At the hearing held by this Court to decide whether it should reconsider, the fact that no formal motion had been filed by the creditor was not considered determinative and the Court chose to focus on ascertaining exactly why the objection had not been timely filed.

The answer was provided in the testimony of the attorney for Production Credit:

> Your Honor, I would like to first of all state that the Notice that we got in on the confirmation of the Plan, I received it in sufficient time. I'm not saying that I didn't get the Notice in time; absolutely not. I'm simply saying that when the Notice was received stating that the hearing would be held on the confirmation of the Plan on August 28, 1984, I inadvertently misread the Notice as to also mean that my objections must be filed on the 28th, and the records will reflect that it was filed on the 28th; five days late, no question about that.
>
> During this entire period of time there was on-going negotiations, which were fruitless, between the parties. We had filed our Proof of Claim previously. We would submit to the Court that it's not a case of forgetting or negligence or ignorance; it's just simply a case of I inadvertently misread the Notice and made a mistake as to when the Notice was to have been filed. . . .

[Transcript Pages No. 11 and 12.]

> I would respectfully submit in conclusion that it was simply a mistake that I very readily admit, an inadvertent mistake that I made in reading the Notice.

[Transcript Page No. 15.]

The Court is thus called upon to determine whether the facts as related by the attorney for the creditor constitute "excusable neglect" which would permit the late filing of the objection to the plan.

The cases are legion which deal with the question of what is "excusable neglect." In considering the numerous opinions and the case at bar, it is important to keep one point in mind. A great number of the cases deal with situations where a creditor has been late in filing a complaint to determine the dischargeability of a particular debt pursuant to § 523(c) of the Bankruptcy Code. Prior to August 1, 1983, these type cases were controlled by former Bankruptcy Rules 409(a)(2) and 906(b)(2) and the "excusable neglect" standard applied to them. Those type cases are now controlled by Bankruptcy Rules 4007(c) and 9006(b)(3) and the "excusable neglect" standard no longer applies. *Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987). The case at bar is controlled by a different sub-section, Bankruptcy Rule 9006(b)(1).

There are two cases which are repeatedly cited on the issue of "excusable neglect." *In re Manning,* 4 BCD 304, 305 (Bkrtcy.D. Conn.1978) and *In re Figueroa,* 33 B.R. 298 (Bkrtcy.S.D.N.Y.1983). *In re Manning,* supra, contains a definition of "excusable neglect" which is frequently quoted and is contained in the opinion of *In re Figueroa,* supra, which discusses at length the

different approaches various courts have taken in trying to determine what is "excusable neglect" in varying factual situations.

In the case of *In re Figueroa,* supra, on February 1, 1983, the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. A creditor, Citibank, received notice from the Bankruptcy Court setting March 7, 1983, as the date for the § 341(a) meeting of creditors, and June 7, 1983 as the last day to file objections to the discharge of a particular debt. On May 5, 1983, an employee of Citibank mailed the documents to its outside counsel and requested that a complaint be filed prior to June 7, 1983.

The debtor received her discharge on June 15, 1983. Thirteen days later, the employee of Citibank contacted the outside counsel to determine the status of the complaint. They informed her they had never received her letter. Subsequently, on July 15, 1983, they moved for an extension of time pursuant to Bankruptcy Rule 409(a)(2) to file a complaint to determine dischargeability. They alleged the letter from Citibank had been lost in the U.S. mails.

In considering the case, the Court first had to decide whether the case was controlled by former Bankruptcy Rules 409(a)(2) and 906(b)(2), or new Bankruptcy Rules 4007(c) and 9006(b)(3). The Court held that under the former rules it could clearly grant Citibank's motion as long as it proved its failure to file before June 7, 1983 was due to "excusable neglect." The Court found that the new rules did not permit a late filing because of "excusable neglect" but even under the broader, more liberal standards of the old Bankruptcy Rule, Citibank's motion would be denied. The Court went on to say:

> The phrase "excusable neglect" is not defined anywhere in the Rules or the Code. *In re Digby,* 29 B.R. 658, 663 (Bkrtcy.N.D.Ohio W.D.1983); *In re Horvath,* 20 B.R. 962, 966 (Bkrtcy.S.D.N.Y. 1982). *In re Heyward,* 15 B.R. 629, 635 (Bkrtcy.E.D.N.Y.1981). Rather, it is a flexible concept and has become a term of art, subject to interpretation by the trier of facts and has been defined as:
>> ... the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform. *In re Manning,* 4 B.C.D. 304, 305 (Bkrtcy.D.Conn.1978)....

While the divergence in opinion as to the applicable principles is such that it leads one court to state that the excusable neglect standard is a "confused and difficult area", *In re Digby,* 29 B.R. 658, 661 (Bkrtcy.N.D.Ohio, W.D.1983), there is a general consensus among the courts as to several basic concepts. Permeating each court's finding as to whether the creditor's late filing was due to excusable neglect is the need to strike a balance between the two parties' competing interests: (1) the debtor's entitlement to the full benefits of his discharge and (2) the creditor's interest in avoiding the same where possible fraud exists. (Citations Omitted).

In striking that balance, the courts look for one essential element: whether the party requesting the extension has demonstrated that there is a reasonable basis for its alleged "excusable neglect." (Citations Omitted). The courts have delineated a panopoly of factors to be considered in making that determination: (1) whether the creditor received adequate notice, (2) whether granting the delay will prejudice the debtor, (3) the source and length of the delay, as well as its impact on efficient court administration, (4) whether the delay was beyond the reasonable control of the person whose duty it was to perform, (5) whether the creditor is a sophisticated creditor, (6) whether the creditor acted in good faith, and (7) whether the client should be penalized for counsel's mistake or neglect. (Citations Omitted).

In other words, Citibank's counsel must demonstrate that its failure to file by the June 7th deadline was due to something more than ordinary negligence; it must be something that could not have been prevented by diligence. *In re Gurney,* 20 B.R. 91, 95 (Bkrtcy.W.

D.Mo.S.D.1983); *In re Gideon*, 17 B.R. 826, 828 (Bkrtcy.D.Me.1982); *In re Parrish*, 13 B.R. 539, 542 (Bkrtcy.W.D.Ky. 1981); *In re Goode*, 3 B.R. 207, 210 (Bkrtcy.W.D.Va.1980). If this were not the case and courts were to routinely grant extensions of time, the prophylactic effect of Rule 906(b)(2) would be nil. *In re Gideon*, 17 B.R. 826, 828 (Bkrtcy. D.Me.1982). Application of the above-cited factors to the case at bar reveals that Citibank's failure to comply was, in fact, the result of ordinary negligence, i.e., a breakdown in the internal procedures of either Citibank or its counsel. Accordingly, Citibank's motion must be denied. *In re Figueroa*, 33 B.R. at 301–02.

In determining the proper standard as to "excusable neglect" in this Circuit, this Court finds the case of *In re South Atlantic Financial Corp.*, 767 F.2d 814 (11th Cir.,1985) to be helpful. Although it is an Eleventh Circuit case, the panel was composed of two former members of the Fifth Circuit and Judge John R. Brown, U.S. Circuit Judge for the Fifth Circuit, sitting by designation. In that case, the debtor had filed a petition for relief under Chapter 11 of the Bankruptcy Code in October 1982. In its schedules, the debtor listed Biscayne Condominium, Inc. (Biscayne) as a "disputed" creditor. On June 22, 1983, the Bankruptcy Court set August 4, 1983, as the last day ("bar date") for creditors listed as "disputed" to file proof of claims. Biscayne received a copy of the order but it did not file a proof of claim before the bar date.

Biscayne's counsel filed a notice of appearance on July 1, 1983. On August 22, 1983, its counsel requested the court to allow Biscayne to file an untimely proof of claim.

At the hearing, Biscayne's counsel readily admitted that her client had failed to submit a timely proof of claim solely because of her error: she explained that Biscayne had employed her after the Chapter 11 proceedings began and it was her impression that the previous attorney had filed a proof of claim.

The Bankruptcy Court concluded that counsel's error did not constitute "excusable neglect" and denied Biscayne's request to file an untimely proof of claim. The District Court affirmed the order of the Bankruptcy Court. 767 F.2d at 815–816.

On appeal, the Circuit Court considered Bankruptcy Rule 3003(c)(3), which specifically applies to the filing of a proof of claim, and Bankruptcy Rule 9006(b).

The Court first considered the case of *In re Gem Rail Corp.*, 12 B.R. 929 (Bankr.E. D.Pa.1981) quoting the definition previously mentioned from *In re Manning*, supra, wherein the Court found that the creditor's failure to obtain records with which to file timely proof of claim was not excusable neglect where there was no showing by creditor that records could not easily have been obtained. 12 B.R. at 931. It also considered the case of *In re Underground Utility Construction Co.*, 35 B.R. 588 (Bankr.S.D.Fla.1983) where the court held that a creditor had failed to prove "excusable neglect" for filing his claim three days late where the untimely filing was caused by his failure to mail his claims to proper address. It also considered other cases of a similar nature.

The Court went on to say:

Although this circuit has not had occasion to construe excusable neglect under either Rule 9006(b)(1) or Rule 906(b), the definition of excusable neglect employed by the courts cited above comports with this circuit's construction of excusable neglect under Fed.R.Civ.P. 60(b)(2), from which Rule 9006(b) and Rule 906(b) are derived. See Fed.R.Bankr.P. 9006 advisory committee note. For instance, in *McLaughlin v. City of LaGrange*, 662 F.2d 1385, 1387–88 (11th Cir.1981), cert. denied, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982), we held that the appellant had not demonstrated "excusable neglect" for failing to respond in a timely manner to a summary judgment motion when his only excuse for failing to do so was that his attorney was a solo practitioner with a busy schedule.

*Sherrod v. Piedmont Aviation, Inc.,* 516 F.Supp. 39, 41 n. 1 (E.D.Tenn.1978) (excusable neglect not established where failure to act was due to "simple inadvertence or ... mistake regarding the content of the rules or unfamiliarity with them").

*In re South Atlantic Financial Corp.,* 767 F.2d at 818.

The Court then specifically addressed the issue of whether "prejudicial effect" should be considered in determining whether excusable neglect exists:

Biscayne acknowledges that its failure to file a timely proof of claim was not the result of anything beyond its reasonable control, such as lack of notice of the bar date, but was the result of its counsel's failure accurately to determine whether a proof of claim had already been filed, a fact she could easily have verified by an examination of the bankruptcy court records. Biscayne contends, nevertheless, that the bankruptcy court abused its discretion when it failed to find "excusable neglect" and allow Biscayne to file a late proof of claim, because such would not have prejudiced any of the other parties participating in SAFCO's reorganization. Whether a late filing by Biscayne would have prejudiced SAFCO, its shareholders, or other creditors was not, however, a relevant inquiry for the courts below. Although some courts have examined the prejudicial effect of a late filing in determining whether excusable neglect exists, (Citations Omitted), this circuit, as we have noted above, has not done so when applying Fed.R.Civ.P. 6(b)(2); and Biscayne has given us no reason why we should construe excusable neglect under Rule 9006(b) any differently. Moreover, we believe that such a construction would do violence to the plain meaning of the language of both Rule 9006(b) and Fed.R.Civ.P. 6(b)(2). Both rules extend the time for the doing of an act where "the failure to act was the result of excusable neglect." It is clear from this language that the focus of these rules is on the movant's actions and the reasons for those actions, not on the effect that an extension might have

on the other parties' positions. Therefore, because Biscayne failed to advance any reason for failing to comply with the August 4 bar date that was not within its reasonable control, we hold that the bankruptcy court did not abuse its discretion in refusing to allow Biscayne to file a proof of claim eighteen days after the bar date.

*In re South Atlantic Financial Corp.,* 767 F.2d at 818.

This Court finds that in the case at bar the failure of the creditor to timely file its objection to the plan was caused by the failure of its attorney to properly and correctly read the order of this Court; that this failure to timely perform a duty was not due to circumstances which were beyond the reasonable control of the person whose duty it was to perform; and that no "excusable neglect" was established which would permit a late filing under the provisions of Bankruptcy Rule 9006(b)(1).

Although this may appear to be a "strict" interpretation and a harsh result from the point of view of the creditor, the result is certainly not as harsh as those cases cited where the creditor receives nothing because his proof of claim was filed a few days late. In this case the creditor will still be paid in accordance with the plan, and even if the objection had been decided on its merits, there is no assurance that the results would have been different after the court heard real estate appraisers for both sides.

## MOTION FOR LEAVE TO APPEAL

■ The process to appeal from a Bankruptcy Court to a District Court or Bankruptcy Appellate Panel is governed by Bankruptcy Rules 8001 through 8019.

Bankruptcy Rule 8001 provides in part that:

(a) **Appeal as of Right; How Taken.** An appeal from a final judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel shall be taken by filing a notice of appeal with the clerk of the bankruptcy

court within the time allowed by Rule 8002.

Bankruptcy Rule 8002 provides in relevant part:

(a) **Ten–Day Period.** The notice of appeal shall be filed with the clerk of the bankruptcy court within 10 days of the date of the entry of the judgment, order, or decree appealed from.

.　　.　　.　　.　　.

(c) **Extension of Time for Appeal.** The bankruptcy court may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made no more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect if the judgment or order appealed from does not authorize the sale of any property or the obtaining of credit or the incurring of debt under § 364 of the Code, or is not a judgment or order approving a disclosure statement, confirming a plan, dismissing a case, or converting the case to a case under another chapter of the Code.

The order of this Court dismissing the objection was entered on May 8, 1986. Twenty days later, on May 28, 1986, Production Credit filed a Notice of Appeal and a Motion for Leave to Appeal. Thus, Production Credit did not file its Notice of Appeal within the ten (10) days required by Bankruptcy Rule 8002(a) and it did not request to extend the time for failing a notice of appeal within the same ten (10) days period. Under this set of facts, Bankruptcy Rule 8002(c) provides that an extension can be granted only upon a showing of "excusable neglect."

During the hearing the attorney for Production Credit offered no evidence or explanation as to why the Notice of Appeal was not filed until May 28, 1986. The Court finds that the failure to timely file the Notice of Appeal was not caused by excusable neglect and that the request to extend the time for filing the Notice of Appeal was not caused by excusable neglect and that the request to extend the time for filing the Notice of Appeal should not be granted.

### REQUEST FOR SANCTIONS BY DEBTORS

In response to the "Motion for Leave to Appeal", the Debtors answered and counterclaimed. In their counterclaim the Debtors sought sanctions in the way of attorneys fees in the amount of $2,486.68 which had been generated by the late filing of the objection to the plan and the late filing of the notice of appeal.

The Debtors base their claim on F.R.Civ. P. 11. Actually, the appropriate rule for seeking such relief is Bankruptcy Rule 9011, which is patterned after F.R.Civ.P. 11. The Court finds that it is guided by the Fifth Circuit case of *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984 (5th Cir.1987), *reh'g granted*, 822 F.2d 511 (1987). Although rehearing *en banc* was granted on July 9, 1987, the case has not yet been decided.[1]

■ The Court finds that under all of the circumstances of the case that sanctions should not be imposed for that part of the case dealing with the late filing of the objection to the plan and the request for reconsideration. The cases dealing with excusable neglect on this point are numerous. The late filing of the objection, although not excusable, was certainly understandable and there is a narrow body of law on which the attorney could make a plausible argument. *In re Magouirk*, 693 F.2d 948 (9th Cir.1982); *In re Rhodes*, 71 B.R. 206 (9th Cir.BAP 1987). Also, the case was unusual in that the judge who signed the order on May 8, 1986, was not the judge who had heard the case.

■ The part of the present proceeding seeking to file a late notice of appeal under Bankruptcy Rule 8002(c) is another matter.

1. Subsequent to the rendering of the opinion in the case at bar, the Fifth Circuit issued its en banc opinion on January 21, 1988. 836 F.2d 866.

In *Thomas v. Capital Sec. Services, Inc.,* supra, the Court said:

... A district court must therefore in each instance where rule 11 sanctions are requested make findings of fact and conclusions of law on each requirement of rule 11, namely:

(1) whether reasonable inquiry into the facts was made;

(2) whether reasonable inquiry into the law was made;

(3) whether the action was taken to harass, delay or increase unnecessarily costs of litigation; and

(4) whether an attorney has met his continuing obligation to reevaluate his litigation position.

In this case, Bankruptcy Rule 8002 is clear as to when a notice of appeal must be filed and the method to follow if an extension is sought. Nothing was offered to justify the late filing of the notice and the request to permit it to be filed late. The Court finds that attorneys fees in the amount of $500 should be imposed on Production Credit and its attorney and awarded to the Debtors and their attorney.

## CONCLUSION

The Court finds: (1) that the Order entered on May 8, 1986, dismissing the objection filed by Production Credit was correct and it should not be reconsidered; (2) that the notice of appeal filed on May 28, 1986, was untimely and that the request to extend the time for filing a notice of appeal should be and hereby is denied; (3) that sanctions in the amount of $500 should be imposed on Production Credit and its attorney and awarded to the Debtors and their attorney; and, (4) the repayment plan of the Debtors, as modified, should be and it hereby is confirmed as to Production Credit.

IT IS SO ORDERED.